NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12022


COMMONWEALTH  vs.  JOSUE MOLINA.


Suffolk.    October 6, 2016. - February 7, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Obscenity, Child pornography, Dissemination of matter harmful to
     minor.  Constitutional Law, Search and seizure,
     Confrontation of witnesses.  Search and Seizure, Warrant,
     Computer.  Evidence, Information stored on computer,
     Intent.  Subpoena.  Intent.  Practice, Criminal, Subpoena,
     Restitution, Confrontation of witnesses.  Restitution.



     Indictments found and returned in the Superior Court
Department on August 27, 2012.

     A pretrial motion to suppress evidence was heard by
Mitchell H. Kaplan, J.; the cases were heard by Brian A. Davis,
J., and a motion for restitution was considered by him.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Ethan C. Stiles for the defendant.
     Ryan E. Ferch, Assistant Attorney General (Nancy Ruthstein,
Assistant Attorney General, also present) for the Commonwealth.

BOTSFORD, J.  The defendant, Josue Molina, appeals from his child pornography convictions under G. L. c. 272, §§ 29B and 29C, on three grounds.  First, he argues that the search warrant for the apartment in which he was living was overbroad as to places and things to be searched.  We disagree, concluding that the search warrant was appropriately particularized.  Second, the defendant challenges the validity of the administrative subpoena that issued under G. L. c. 271, § 17B, for Internet service records; he argues that the subpoena, to be constitutional, could only be issued based on a showing of probable cause.  We similarly reject this argument.  Finally, the defendant argues that the Commonwealth failed to prove that he had the lascivious intent necessary to support a conviction under G. L. c. 272, § 29B (§ 29B).  Although we agree with the defendant that lascivious intent is required to be proved with respect to every type of conduct proscribed by § 29B, we conclude that this requirement was met in this case.  We affirm the defendant's convictions.

The Commonwealth cross-appeals, arguing that it is entitled to a restitution hearing in this case, and that the victim for whom the Commonwealth seeks restitution is not required as a matter of law to appear and testify in order to protect the defendant's constitutional right of confrontation.  We agree, and remand for the requested restitution hearing.

1.  Background.[1]  a.  File-sharing.  The dissemination of child pornography is facilitated by free "peer-to-peer" file-sharing programs, which allow users to directly connect to other users' computers in order to search and download files shared by other users.  See United States v. McLellan, 792 F.3d 200, 205 (1st Cir.), cert. denied, 136 S. Ct. 494 (2015).  Ares is one such file-sharing program, freely available to the general public for download.  Ares requires users to accept a license agreement explaining that any files stored in the program's default download location, called "My Shared Folder," are accessible to other users.  Users may move downloaded files out of this default folder and save them elsewhere, beyond the reach of other Ares users.

Another version of the Ares program, known as Roundup Ares, is available only to law enforcement.  By conducting searches using Roundup Ares of terms commonly associated with child pornography, a law enforcement investigator can generate the

---

[1] This background section is based on the testimony of the witnesses at the jury-waived trial in this case.  Although not explicitly credited in the judge's oral findings at the end of the trial, the testimony we summarize was uncontroverted, and it is not challenged by the defendant on appeal.  With respect to Internet file-sharing and the Ares program in particular, the search warrant application at issue in this case had attached to it a printed explanation entitled "Peer to Peer (P2P) File Sharing & the Ares Network" that provided information consistent with the trial testimony summarized here.  The warrant application with attachments was admitted without objection as an exhibit at trial.

Internet protocol (IP) addresses[2] of program users sharing suspected files of child pornography.  Every computer file has a unique identifier known as a "secure hash algorithm" (hash value).  Composed of thirty-two characters, hash values are like "digital fingerprints" allowing law enforcement agencies to recognize files previously identified as child pornography.  See Commonwealth v. Martinez, 476 Mass.    ,    & n.1 (2017).

b.  Facts.  On March 12, 2012, State police Trooper Michael Murphy conducted a search for child pornography by accessing the Roundup Ares program.  His search indicated that a computer associated with the IP address 108.49.7.93 might then be sharing

---

[2] An Internet protocol (IP) address is a string of numbers identifying a point of network entry to the Internet, at a specific date and time, to enable the routing of Internet traffic.  See Internet Assigned Numbers Authority, Glossary of Terms, http://www.iana.org/glossary [https://perma.cc/S55N-Z9MB]; United States v. Kearney, 672 F.3d 81, 84 n.1, 89-90 & n.6 (1st Cir. 2012).  An IP address does not "identify an exact physical location, only an electronic destination on the Internet."  Mackey, Schoen, & Cohn, Electronic Frontier Foundation, Unreliable Informants:  IP Addresses, Digital Tips and Police Raids 5 & nn.4-6 (Sept. 2016), available at https://www.eff.org/files/ 2016/09/22/2016.09.20_final_formatted_ip_address_white_paper_ 0.pdf [https://perma.cc/Y42U-C5TG] (EFF, Unreliable Informants).  It is possible to link an IP address to a particular physical location at a particular point in time through information supplied by an Internet service provider (ISP), because when a subscriber purchases Internet service from an ISP, the ISP assigns a unique IP address to the subscriber at a particular physical address supplied by the subscriber.  See Commonwealth v. Martinez, 476 Mass.    ,    (2017); Commonwealth v. Anthony, 451 Mass. 59, 62 & n.3 (2008).  See also United States v. McLellan, 792 F.3d 200, 213-214 (1st Cir.), cert. denied, 136 S. Ct. 494 (2015).

child pornography files.  By connecting directly to that computer, Murphy was able to view a list of the files in its shared folder.  Among the listed file titles, Murphy recognized terms commonly associated with child pornography and proceeded to download two complete video files.  He viewed both and determined that they depicted child pornography, specifically, nude prepubescent females engaged in sexual conduct.

In order to identify the account holder associated with the IP address, at Murphy's request, the district attorney for the Essex district sent an administrative subpoena to Verizon Internet Services, Inc. (Verizon), pursuant to G. L. c. 271, § 17B.  Verizon responded, indicating that IP address 108.49.7.93 was associated with a subscriber named "Hermes Delcid" at a certain address in Revere (apartment).  Murphy then referred the investigation to the cyber crime division in the office of the Attorney General.

As a member of that division, State police Trooper Daniel Herman conducted physical surveillance of the apartment, and observed outside the house a mailbox with five names on it, including Delcid's (and also including the defendant's).  Herman performed as well a check of registry of motor vehicles records, which confirmed that address as Delcid's apartment.  Based on this information, on April 2, 2012, State police Trooper Mark Walsh, also of the Attorney General's cyber crime division,

applied for and obtained a warrant to search the apartment and in particular for the following: electronic devices containing evidence of child pornography; evidence of child pornography in any other format; evidence of use, control, ownership, or access to the Verizon Internet account of Delcid at that address; evidence of ownership, access, or control of the peer-to-peer network that was operating with IP address 108.49.7.93; evidence of custody or control of the apartment; and evidence of use, control, ownership, possession, or access to electronic devices at the apartment. Walsh's supporting affidavit detailed his experience, summarized the investigation, and provided background information on peer-to-peer file sharing and the Ares file-sharing program. See note 1, supra. The search warrant authorized the search of the apartment described without naming any person to be searched.

State police officers executed the search warrant on the morning of April 4, 2012; some officers proceeded into the apartment while others remained in the driveway. Inside the apartment, the officers found Delcid, his wife, and a small child. Forensic examiner Mark Scichilone[3] "previewed" a computer located in the living room and belonging to Delcid, but excluded it from further search when his preliminary review yielded no

---

[3] Mark Scichilone worked in the Attorney General's computer forensics laboratory.

files consistent with child pornography.  In a bedroom later identified as the defendant's, officers observed the Ares program operating on an open laptop computer.[4]  Scichilone photographed the computer screen, which showed downloads and uploads of child pornography files in progress from and to other computers.

In the driveway, officers observed an idling motor vehicle with someone sitting in the front passenger seat.  State police Lieutenant Steven Fennessy approached the vehicle and spoke to its occupant, who was the defendant.  After being informed by Fennessy that he was not under arrest, the defendant stated that he lived in the apartment,[5] that he owned a laptop computer located in his bedroom at the front of the apartment, and that he used the Ares program.  In response, Fennessy advised the defendant of the Miranda rights, and the defendant stated that he was willing to continue the conversation.

At that point, Fennessy and the defendant moved to an unmarked police vehicle, where the defendant signed a Miranda

---

[4] The laptop computer was sitting on top of a desktop computer and attached to an external hard drive, both of which were also seized.

[5] The defendant shared the apartment with several roommates including Hermes Delcid.  The record is unclear as to leasing arrangements for the unit or relationships among its occupants, but the parties stipulated that the defendant's bedroom was generally understood to be his own.

waiver form and the rest of the interview was recorded.  The defendant admitted to being interested in child pornography and to having downloaded about twenty such video recordings, and cited several search terms he had used.  He estimated that he had been downloading child pornography for about five years, and recalled having previously used another file-sharing program on the desktop computer in his room.  He further stated that he owned an external hard drive.  The defendant characterized child pornography as "when underage or any kids, they record it and it's like sex abuse basically;" he estimated the age of the girls depicted in recent downloads to be about nine.  He denied knowing any of the children depicted or having ever sexually abused any children.  The defendant was then arrested.

The State police search team seized numerous electronic devices from the apartment, including the defendant's laptop and desktop computers and his external hard drive.[6]  The hard drive from the laptop computer contained the Ares program; a large majority of files downloaded through the file-sharing feature of the program contained terms associated with child pornography. Six files in the shared folder were confirmed to contain child

---

[6] The return of the search warrant lists seventeen entries. Of these, eight entries appear to relate to computers or hard drives, five appear to relate to data storage (flash drives and compact discs), and four appear to relate to nonelectronic items (notes, receipts, and packaging).

pornography.  The laptop and desktop computers and the external hard drive revealed over one hundred files containing suspected child pornography.  An analyst employed by the Attorney General previewed a sample of the video recordings on each device; the samples contained child pornography.  The devices were also found to include one of the files Murphy had downloaded during his Roundup Ares surveillance on March 12, 2012, and remnants of the other.

c.  Procedural history.  On August 27, 2012, a grand jury indicted the defendant on one count of possession of child pornography with the intent to disseminate in violation of § 29B, one count of dissemination of child pornography in violation of § 29B, and three counts of possession of child pornography in violation of G. L. c. 272, § 29C.  The defendant filed a motion to suppress the electronic evidence seized from the apartment as well as his statements.  After a nonevidentiary hearing, a judge in the Superior Court (motion judge) denied the motion.  The defendant was tried jury-waived before a different Superior Court judge (trial judge) and was found guilty of all charges.  The Commonwealth moved for restitution for harm to a victim, but the trial judge denied the motion without a hearing and thereafter denied the Commonwealth's motion to reconsider. The defendant filed a timely notice of appeal from his

convictions, and the Commonwealth also filed a notice of appeal.[7]
We granted the defendant's application for direct appellate
review.

2. Discussion. a. Overbreadth of the search. The
defendant argues that the search warrant was impermissibly
overbroad, as to both places and "things" to be searched. It is
a given that under the Fourth Amendment to the United States
Constitution and art. 14 of the Massachusetts Declaration of
Rights, probable cause, necessary for the issuance of a search
warrant, requires a substantial basis for concluding that the
items sought are related to the criminal activity under
investigation, and that they reasonably may be expected to be
located in the place to be searched at the time the search
warrant issues. Commonwealth v. Kaupp, 453 Mass. 102, 110
(2009), and cases cited. In addition, under the Fourth
Amendment, warrants must "particularly describ[e] the place to
be searched, and the persons or things to be seized," and art.
14 requires warrants to be "accompanied with a special

---

[7] The defendant argues that the Commonwealth filed its
appeal one day late, and that the court therefore lacks
jurisdiction to entertain it. We agree with the Commonwealth
that the docket entries are not entirely clear, but assuming the
notice of appeal was filed one day late, we extend the time for
filing the Commonwealth's notice of appeal by one day pursuant
to Mass. R. A. P. 2, 365 Mass. 845 (1974), and Mass. R. A. P.
14 (b), as amended, 378 Mass. 939 (1979), and therefore treat
the Commonwealth's notice of appeal as timely filed.

designation of the persons or objects of search, arrest, or seizure."  See G. L. c. 276, § 2 (search warrants "shall particularly describe the property or articles to be searched for").  By defining and limiting the scope of the search, these constitutional and statutory particularity requirements prohibit general warrants amounting to "exploratory rummaging in a person's belongings."  Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).  See Commonwealth v. Pope, 354 Mass. 625, 629 (1968).  A warrant lacking the requisite particularity may thus be challenged as overbroad.

In reviewing a finding of probable cause, the affidavit supporting the warrant should be interpreted "in a commonsense and realistic fashion," and "read as a whole, not parsed, severed, and subjected to hypercritical analysis" (citations omitted).  Kaupp, 453 Mass. at 111.  An inference drawn from the affidavit, "if not forbidden by some rule of law, need only be reasonable and possible; it need not be necessary or inescapable" (citation omitted).  Id.  A reviewing court gives considerable deference to a magistrate's determination of probable cause.  Commonwealth v. Anthony, 451 Mass. 59, 69 (2008).  Because such a determination is a conclusion of law, however, we review it de novo.  Commonwealth v. Foster, 471 Mass. 236, 242 (2015).

i.  Place to be searched.  The defendant argues that where, as here, the apartment was shared living space, a search warrant for the entire apartment was overbroad.  The Fourth Amendment "protects people, not places" against unreasonable searches and seizures, Katz v. United States, 389 U.S. 347, 351 (1967), but just the same, warrants authorize the searches of particular places, and do so properly wherever there is a sufficient nexus between the items sought and the place to be searched.  Commonwealth v. McDermott, 448 Mass. 750, 768, cert. denied, 552 U.S. 910 (2007).  That nexus may be based on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide evidence of the crime.  Id. "[T]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved."  Commonwealth v. Freiberg, 405 Mass. 282, 298 (1989), cert. denied, 493 U.S. 940 (1989).

Here, the warrant established a sufficient nexus, articulated with adequate particularity.  The defendant argues that the police "knew next to nothing of the people and computing devices" inside the apartment to be searched.  His emphasis on people, however, is misguided where the warrant appropriately substantiated a connection between the apartment and the evidence of child pornography reasonably expected to be

located therein.  Zurcher v. Stanford Daily, 436 U.S. 547, 556 & n.6 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought").  See Martinez, 476 Mass. at    ,   .

It is true that the police were aware prior to the search that the Verizon subscriber was not the apartment's sole occupant:  there were five names on the apartment's mailbox. The search warrant, however, authorized a search of the location associated with the IP address, not a search of any single associated subscriber.  Although IP addresses alone can be unreliable indicators of location,[8] they suffice when corroborated by the Internet service provider (ISP), as occurred here.  See United States v. Grant, 218 F.3d 72, 75 (1st Cir.), cert. denied, 531 U.S. 1025 (2000) (IP address corroborated by ISP supported probable cause).  That reliability may be further strengthened by police surveillance, which here confirmed the connection between the IP address and the physical location when officers observed the ISP subscriber's name on the apartment's

---

[8] See United States v. Vosburgh, 602 F.3d 512, 527 & n.14 (3d Cir. 2010), cert. denied, 563 U.S. 905 (2011) (characterizing IP addresses as "fairly 'unique' identifiers," but cautioning that "there undoubtedly exists the possibility of mischief and mistake").  See EFF, Unreliable Informants, supra at 8-10.

mailbox.  See McLellan, 792 F.3d at 211 n.9, quoting United States v. Gillman, 432 Fed. Appx. 513, 515 (6th Cir. 2011) (finding sufficient nexus between illegality and defendant's apartment where "(1) child pornography was transferred to police from a specific IP address; (2) that IP address was registered to the defendant's residential address; and (3) the defendant actually lived at that address").[9]

The search was indeed limited to the apartment.  Within the apartment, however, the search was limited not to areas under Delcid's exclusive control but rather to those associated with the IP address.  Cf. Commonwealth v. Dew, 443 Mass. 620, 626 (2005) (search warrant for entire multifamily home not overbroad where defendant had access to all units).  Just as evidence could have been anywhere in an entire house to which the defendant had access in Dew, so here could computer devices using the monitored IP address be anywhere in the apartment.

---

[9] Many Federal Circuit Courts of Appeals have held that a corroborated IP address provides sufficient probable cause for a search warrant of the associated physical address to issue.  See United States v. Chiaradio, 684 F.3d 265, 279 (1st Cir.), cert. denied, 133 S. Ct. 589 (2012); United States v. Renigar, 613 F.3d 990, 991, 994 (10th Cir. 2010); Vosburgh, 602 F.3d at 526-527; United States v. Stults, 575 F.3d 834, 843-844 (8th Cir. 2009), cert. denied, 559 U.S. 915 (2010); United States v. Perrine, 518 F.3d 1196, 1205-1206 (10th Cir. 2008); United States v. Pérez, 484 F.3d 735, 740 (5th Cir.), cert. denied, 552 U.S. 952 (2007); United States v. Wagers, 452 F.3d 534, 539 (6th Cir.), cert. denied, 549 U.S. 1032 (2006); United States v. Hay, 231 F.3d 630, 635-636 (9th Cir. 2000), cert. denied, 534 U.S. 858 (2001).

Where the defendant's unlocked bedroom showed no indicia of separate ownership from the rest of the apartment, a search of that bedroom as part of the physical address associated with the IP address was proper.

ii. Things to be searched. Molina further contends that the warrant was overbroad in allowing police to seize "all computing devices found in the apartment regardless to whom they belonged or where they may have been found." The argument fails. The information available to the police was that suspected child pornography was being sent and received through a computer device connected to IP address 108.49.7.93 and that that IP address was assigned to a subscriber at the apartment. As discussed above, the warrant properly permitted a search of the entire physical location associated with the target IP address for any evidence (computers and related items) of child pornography. Because that evidence, in the form of electronic files, could be easily transferred between devices at the same location, police need not have limited the devices to be searched. See McDermott, 448 Mass. at 770 (warrant seeking evidence of defendant's mental state not overbroad where police "did not have information that would allow them further to limit

the description of this category of items").[10]  Where evidence of

child pornography could thus have existed on any or all

electronic devices at the location associated with the target IP

address, the seizure of over a dozen electronic devices found in

the apartment did not exceed the warrant's scope.

    iii.  Minimization protocol.  Although we conclude that

there was probable cause to justify the search of the apartment

in this case, the execution of the search warrant must itself

satisfy the "ultimate touchstone" of reasonableness.  See

Commonwealth v. Entwistle, 463 Mass. 205, 213 (2012), cert.

denied, 133 S. Ct. 945 (2013).  The defendant does not squarely

---

[10] See also United States v. Ivers, 430 Fed. Appx. 573, 575
(9th Cir.), cert. denied, 132 S. Ct. 337 (2011) (scope of
warrant proper where, although police could have provided more
specific description of items sought, they "had no way of
knowing where the images were stored" [citation omitted]);
United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999)
(warrant limiting search of entire home to "[a]ny and all
computer software and hardware, . . . computer disks, disk
drives . . . [a]nd any and all visual depictions, in any format
or media, of minors engaging in sexually explicit conduct"
sufficiently particular because search and seizure of computer
and all available disks was "narrowest definable [one]
reasonably likely to obtain images"); United States v. Clark,
524 F. Supp. 2d 896, 901 (W.D. Mich. 2006), aff'd, 257 Fed.
Appx. 991 (6th Cir. 2007), cert. denied, 555 U.S. 829 (2008)
(warrant limiting search of entire home in which defendant
rented room to "[c]hild pornography in any form including . . .
computer printed images," and limiting search of computer hard
drives and other storage media to "evidence . . . related to
child pornography," was as specific as it could have been, given
that defendant could have stored files containing child
pornography almost anywhere on his computer or other storage
media); United States v. Albert, 195 F. Supp. 2d 267, 276 (D.
Mass. 2002) (similar).

challenge the scope or reasonableness of the search of his electronic devices or his digital files once police had seized the devices, nor does he suggest that police should be required to develop and implement a minimization protocol to govern the execution of any such digital search.  We note, moreover, that in this case the police and associated personnel conducting the search promptly, and commendably, screened and excluded at least Delcid's computer from further search or seizure; it also appears that when the seized electronic devices were seized thereafter, the personnel conducting the searches did so by searching for file names containing terms commonly associated with child pornography in order to preview only a limited sample of files consistent with those terms.

On the record before us in this case, nothing indicates that execution of the search in this case was unreasonable. Nevertheless, the fact that the target apartment appeared to be the residence of multiple individuals[11] is significant.  Where, as the search warrant return in this case indicates, multiple electronic devices that may well belong to multiple individuals are seized and searched, the reasonableness of the undertaking

---

[11] The police knew from the surveillance they conducted before applying for the search warrant that the target apartment had a mailbox with five different names on it, and when the police entered the apartment, we infer that it was quite obvious that more than Delcid and his family were living there.

will be judged, at least in part, by whether the searches of those devices are conducted in a manner that seeks to limit the scope of the search as much as practicable in the particular circumstances.  In the future, we may consider whether to require, as some courts have, a digital search protocol that would affirmatively demonstrate "a high regard for rights of privacy and take all measures reasonable to avoid unnecessary intrusion."  Commonwealth v. Vitello, 367 Mass. 224, 262 (1975).  Compare United States v. Galpin, 720 F.3d 436, 451 (2d Cir. 2013) (declining to require "specific search protocols or minimization undertakings as basic predicates for upholding digital search warrants"), with United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1176-1177 (9th Cir. 2010) (en banc) (per curiam) (requiring minimization protocol).

In the McDermott case, we explained that no advance approval was required for computer search methods because the magistrate issuing the warrant "likely does not have the technical expertise to assess the propriety of a particular forensic analysis."  McDermott, 448 Mass. at 776.  It is for precisely this reason, however, that additional guidance at the present time would be very useful concerning ways that those conducting digital searches can minimize intrusions into the private electronic files of individuals who may have no connection at all with the child pornography or other suspected

criminal activity being investigated. Nearly a decade's worth of technological advancements have taken place since this court decided McDermott, and as was clear at oral argument in this case, we are concerned about the lack of protocols or formal guidelines for executing search warrants for digital evidence. Cf. Kerr, Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data, 48 Tex. Tech. L. Rev. 1, 17-18 (2015) ("The best way to minimize the unwarranted intrusions upon privacy for computer searches is to impose use restrictions on the nonresponsive data revealed in the course of the search"). The Attorney General's existing digital evidence guide offers helpful parameters,[12] and we invite the Attorney General to develop further guidance for the conduct of digital searches that could be made available to both State and local officers conducting digital searches.

b. Administrative subpoena. Pursuant to G. L. c. 271, § 17B (§ 17B), a district attorney may issue an administrative subpoena for the records of an ISP "whenever [he or she] has reasonable grounds to believe that [those records] are relevant and material to an ongoing criminal investigation." This statute is to be read in conjunction with the Federal Stored

---

[12] See Office of the Attorney General, Massachusetts Digital Evidence Guide (June 9, 2015), available at http://www.mass.gov/ago/docs/cybercrime/ma-digital-evidence-guide.pdf [https://perma.cc/C9XJ-NAYC].

Communications Act (SCA), 18 U.S.C. §§ 2701-2711 (2012). See G. L. c. 271, § 17B (permitting subpoenas "[e]xcept as otherwise prohibited under [18 U.S.C. § 2703]"). The SCA requires subpoenaed providers to disclose a subscriber's name, address, telephone connection records (including session times and durations), length and type of service, network address, and payment source. 18 U.S.C. § 2703(c)(2).

The defendant challenges the validity of the administrative subpoena sent by the district attorney to Verizon in this case, arguing that it could only be sent if supported by probable cause, and that the § 17B standard requiring only a showing that the records sought are "relevant and material to an ongoing criminal investigation" was constitutionally insufficient. Accordingly, he claims, because the administrative subpoena was invalid, the invalidity applied as well to the search warrant because probable cause for it was supported in part by information obtained through this subpoena, requiring the reversal of his conviction.

Assuming, without deciding, that the defendant has standing to challenge the administrative subpoena for Delcid's Verizon subscriber records, we reject the defendant's contention that the issuance of such a subpoena requires probable cause. Previous decisions of this court have reviewed and upheld the constitutional validity of the "relevant and material" standard

contained in § 17B, at least as applied to certain types of

telephone records.  See Commonwealth v. Vinnie, 428 Mass. 161,

178, cert. denied, 525 U.S. 1007 (1998), adopting reasoning of

Commonwealth v. Feodoroff, 43 Mass. App. Ct. 725, 729-730

(1997).  Section 17B specifically prohibits disclosure of the

contents of subscriber communications, including Internet

browser history.  G. L. c. 271, § 17B.[13]  Here, however, the

subscriber information reveals substantially less than the

telephone records we have said permissibly could be subpoenaed.

See Commonwealth v. Chamberlin, 473 Mass. 653, 658 (2016);

Vinnie, supra.  At least on the facts of this case, we continue

to think that for the limited scope of information obtained

pursuant to § 17B, the requirements of art. 14 were satisfied by

the statute's requirement that the requestor have reasonable

grounds to believe the records are relevant and material to an

ongoing criminal investigation.

Because we have rejected the defendant's challenges to the

search warrant -- the overbreadth challenge as well as the

---

[13] Specifically, the relevant text of G. L. c. 271, § 17B,
provides:  "No subpoena issued pursuant to this section shall
demand records that disclose the content of electronic
communications or subscriber account records disclosing internet
locations which have been accessed including, but not limited
to, websites, chat channels and newsgroups, but excluding
servers used to initially access the internet.  No recipient of
a subpoena issued pursuant to this section shall provide any
such content or records accessed, in response to such subpoena."

challenge to the supporting information obtained through the § 17B administrative warrant -- we affirm the motion judge's order denying the defendant's motion to suppress evidence obtained in the search of the apartment.[14]

c. G. L. c. 272, § 29B:  proof of lascivious intent requirement.  Molina contests the sufficiency of the evidence supporting his conviction of possession of child pornography with the intent to disseminate under § 29B (b).  He argues that the Commonwealth failed to prove that he had the lascivious intent he claims is required to be proved as an element of the crime.  The Commonwealth responds that proof of lascivious intent is not necessary to convict a defendant of possession with intent to disseminate under § 29B (b), but that in any event there was proof of lascivious intent, and indeed proof of all the elements of the crime of possession with intent to disseminate.  We agree with Molina that lascivious intent must be proved to establish any violation of § 29B, including in particular possession of child pornography with intent to

---

[14] For the same reason, we also affirm the motion judge's denial of the defendant's motion to suppress his statements to State police Lieutenant Steven Fennessy and other police officers as inadmissible fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471, 486 (1963).  See, e.g., Commonwealth v. Estabrook, 472 Mass. 852, 860-864 (2015) (only statements resulting from exploitation of illegally obtained evidence need be suppressed).

disseminate under § 29B (b), but we disagree that the evidence was insufficient to do so here.

Section 29B has two subsections, the first of which, § 29B (a), focuses on child pornography depicting child nudity, and the second of which, § 29B (b), addresses child pornography depicting children engaging in sexual conduct. Each subsection punishes both acts of dissemination as well as possession with intent to disseminate. Sections 29B (a) and (b) provide in relevant part as follows:

> "(a) Whoever, with lascivious intent, disseminates any visual material that contains a representation or reproduction of any posture or exhibition in a state of nudity involving the use of a child who is under eighteen years of age, knowing the contents of such visual material or having sufficient facts in his possession to have knowledge of the contents thereof, or has in his possession any such visual material knowing the contents or having sufficient facts in his possession to have knowledge of the contents thereof, with the intent to disseminate the same, shall be punished . . . .

> "(b) Whoever with lascivious intent disseminates any visual material that contains a representation or reproduction of any act that depicts, describes, or represents sexual conduct participated or engaged in by a child who is under eighteen years of age, knowing the contents of such visual material or having sufficient facts in his possession to have knowledge of the contents thereof, or whoever has in his possession any such visual material, with the intent to disseminate the same, shall be punished . . . ." (Emphases added.)

As used in § 29B, the term "lascivious intent" is defined in G. L. c. 272, § 31, to mean "a state of mind in which the sexual gratification or arousal of any person is an objective."

G. L. c. 272, § 31.[15]  The Commonwealth agrees with the defendant

that both types of conduct proscribed by § 29B (a) and the

actual dissemination proscribed by § 29B (b) require lascivious

intent, but the Commonwealth disputes that the possession with

the intent to disseminate prohibited by § 29B (b) does so.  In

the Commonwealth's view, the lascivious intent required for

---

[15] The full definition of "lascivious intent" in G. L. c. 272, § 31, is the following:

"'Lascivious intent,' a state of mind in which the sexual gratification or arousal of any person is an objective.  For the purposes of prosecution under this chapter, proof of lascivious intent may include, but shall not be limited to, the following:

"(1) whether the circumstances include sexual behavior, sexual relations, infamous conduct of a lustful or obscene nature, deviation from accepted customs and manners, or sexually oriented displays;

"(2) whether the focal point of a visual depiction is the child's genitalia, pubic area, or breast area of a female child;

"(3) whether the setting or pose of a visual depiction is generally associated with sexual activity;

"(4) whether the child is depicted in an unnatural pose or inappropriate attire, considering the child's age;

"(5) whether the depiction denotes sexual suggestiveness or a willingness to engage in sexual activity;

"(6) whether the depiction is of a child engaging in or being engaged in sexual conduct, including, but not limited to, sexual intercourse, unnatural sexual intercourse, bestiality, masturbation, sado-masochistic behavior, or lewd exhibition of the genitals."

actual dissemination in the first "whoever" clause of § 29B (b) does not also modify the second "whoever" clause that describes possession with the intent to disseminate, with the result that, in contrast to § 29B (a), possession with the intent to disseminate under § 29B (b) does not require proof of lascivious intent to establish the crime.[16]

We are not persuaded that such a distinction between the two subsections can properly rest on the presence of a second "whoever" in § 29B (b), and the absence of two commas. In Commonwealth v. Dingle, 73 Mass. App. Ct. 274, 279 (2008), the Appeals Court, reviewing the legislative history of the statute, interpreted § 29B (a) and (b) as "describ[ing] different means of committing the same offense." We agree, and based on the same legislative history, conclude that the lascivious intent requirement applies to all four means of violating the statute contained in the two subsections.

---

[16] In particular, the Commonwealth asserts that, in § 29B (a), the lascivious intent requirement is set off by commas and clearly modifies the entire subsection to reach both dissemination and possession with the intent to disseminate visual material depicting child nudity, but in § 29B (b), the absence of commas around the lascivious intent requirement and the presence of a second "whoever" indicates that the lascivious intent requirement was only intended to apply to dissemination of depictions of child sexual acts, and not to possession with the intent to disseminate this type of visual material.

Section 29B was originally enacted in 1977. See St. 1977, c. 917, § 2. In its original version, the statute did not have separate subsections, and provided in relevant part:

> "<u>Whoever</u> disseminates any visual material that contains a representation or reproduction of any posture or exhibition in a state of nudity or of any act that depicts, describes, or represents sexual conduct participated or engaged in by a child who is under eighteen years of age, knowing the contents of such visual material or having sufficient facts in his possession to have knowledge of the contents thereof, <u>or whoever</u> has in his possession any such visual material knowing the contents or having sufficient facts in his possession to have knowledge of the contents thereof, with the intent to disseminate the same, shall be punished . . . ." (Emphases added.)

<u>Id</u>. As this quoted language indicates, the statute combined the four means of committing the crime -- dissemination of visual material depicting child nudity, dissemination of visual material depicting child sexual acts, and possession with the intent to disseminate both types of pornographic visual material -- in a single section, and there was no lascivious intent requirement for any of these means. In 1988, this court struck down a statute closely related to § 29B, G. L. c. 272, § 29A,[17] as unconstitutionally overbroad under the First Amendment to the United States Constitution. <u>Commonwealth</u> v. <u>Oakes</u>, 401 Mass. 602, 603 (1988), vacated by 491 U.S. 576 (1989). In response,

_____

[17] General Laws c. 272, § 29A, concerns the production of visual material depicting children in a state of nudity or engaged in sexual conduct, whereas § 29B relates to the dissemination of such material (or possession with the intent to disseminate).

the Attorney General presented to the Legislature proposed amendments to both §§ 29A and 29B that, among other things, separated each section into separate subsections, and added a lascivious intent requirement to § 29A (a) and also to § 29B (a) and (b).  See St. 1988, c. 226, §§ 1, 2.  It is clear from the submissions of the Attorney General that the goal was to correct the constitutional overbreadth infirmity that this court in Oakes found to invalidate § 29A by adding a lascivious intent requirement not only to what became § 29A (a), but also to § 29B (a) and (b).  See Memorandum from Assistant Attorney General Lila Heideman to Sen. Paul Harold and Rep. James Brett (June 21, 1988) (on file with Committee on Criminal Justice) (Heideman memorandum).  See also Dingle, 73 Mass. App. Ct. at 280-282.  The Legislature enacted the amendments proposed by the Attorney General with essentially no substantive changes.  See St. 1988, c. 226, § 2; Heideman memorandum, supra.  The Commonwealth makes much of the second "whoever" in § 29B (b) and the absence of the same in § 29B (a).  However, a second "whoever" existed in the originally enacted, single-section version of § 29B, before the addition of the lascivious intent requirement to it, and the legislative history contains nothing to indicate that the continued presence of a second "whoever" in § 29B (b) but absence in § 29B (a) reflected an intentional decision to distinguish between the two subsections in order to

ensure that lascivious intent was <u>not</u> required for possession with the intent to disseminate child pornography depicting child sexual acts. Rather, the legislative history suggests the opposite -- that is, as stated previously, an intent on the part of the drafters of the 1988 amendment to ensure that lascivious intent was an element of all aspects of § 29B (<u>a</u>) and (<u>b</u>).[18] Moreover, to construe § 29B (<u>b</u>) as imposing a proof of lascivious intent requirement in relation to the more serious and harmful act of actual dissemination, but not to the act of possession with the intent to disseminate, seems illogical. See <u>Flemings</u> v. <u>Contributory Retirement Appeal Bd</u>., 431 Mass. 374, 375-376 (2000). In sum, we construe § 29B to require proof of lascivious intent with respect to all four means of committing the crime, including possession with the intent to disseminate visual material depicting a child engaged in a sexual act under § 29B (<u>b</u>).[19,20]

---

[18] This is in contrast to G. L. c. 272, § 29A, where the lascivious intent requirement applies solely to § 29A (<u>a</u>) (child nudity) but is not mentioned in § 29A (<u>b</u>) (child engaged in sexual act).

[19] We note, as the trial judge did, that <u>both</u> indictments charging the defendant with violating § 29B included a reference to lascivious intent -- that is, the indictment charging the defendant with dissemination of child pornography under § 29B (<u>a</u>), as well as the separate one charging possession with the intent to disseminate under § 29B (<u>b</u>).

d.  Sufficiency of the evidence.  The defendant argues that there was insufficient evidence to support his convictions of dissemination of child pornography and possession of child pornography with the intent to disseminate under § 29B (a) and (b), respectively.  This argument fails.  For both of the § 29B charges, the disputed elements of the offenses boil down to whether there was sufficient evidence of (1) lascivious intent; and (2) dissemination or possession with the intent to disseminate.  Our review of the trial record persuades us that there was sufficient evidence to prove beyond a reasonable doubt each element of each § 29B charge.

i.  Evidence of lascivious intent.  The evidence in this case showed that the defendant was downloading and uploading -- i.e., sharing -- files containing children "exhibit[ed] in a

---

[20] In Commonwealth v. LeBlanc, 475 Mass. 820, 822 (2016), we considered the significance of seven separate "whoever" clauses in G. L. c. 90, § 24 (2) (a), a subsection of the statute prohibiting operation of a motor vehicle while under the influence of intoxicants.  The specific question in that case was whether language in the first "whoever" clause requiring proof that the defendant was operating on a "public way" should be understood also to apply the same "public way" requirement to each of the other "whoever" clauses; we concluded that the "public way" requirement did not apply to the other clauses.  Id.  Section 29B (b) is very different in structure and subject matter from the statute at issue in the LeBlanc case.  It is also significant that in contrast to the history of § 29B (b), the legislative history of the statute in LeBlanc did not offer support for a construction that would apply a public way requirement to all the "whoever" clauses, and the statute made better sense if the public way requirement did not apply to all of the other "whoever" clauses.

state of nudity" who were "engaging in or being engaged in sexual conduct" that included one or more of the acts ("sexual intercourse, unnatural sexual intercourse, bestiality, masturbation, sado-masochistic behavior, or lewd exhibition of the genitals") described in the definition of "lascivious intent" set out in G. L. c. 272, § 31. See note 16, supra. Given that "lascivious intent" requires proof of "a state of mind in which the sexual gratification or arousal of any person is an objective" (emphasis added), id., we agree with the trial judge that the evidence permitted the reasonable inference that the defendant had his own sexual gratification as an objective in downloading and sharing depictions of children in various states of nudity engaged in sexual conduct, and that this permissible inference sufficed to permit the judge, as the fact finder, reasonably to find proved beyond a reasonable doubt lascivious intent in relation to both the dissemination charge under § 29B (a) (pornography depicting child nudity) and the possession with the intent to disseminate charge under § 29B (b) (pornography depicting a child engaged in sexual conduct).

ii. Evidence of dissemination and of possession with intent to disseminate. The defendant argues that the evidence on dissemination showed only that he had failed to take any steps to change the default download folder from the "My Shared Folder" to one that was not shared with other Ares program

users, and that this evidence was insufficient to support a conviction for actual dissemination with lascivious intent. The trial judge reasoned that the file-sharing program, displaying simultaneous downloads and uploads, and explicitly identified as such on the Ares program screen on the defendant's computer, provided sufficient evidence to prove the dissemination charge under § 29B (a). We agree. "When an individual consciously makes files available for others to take and those files are in fact taken, [knowing] distribution has occurred. The fact that the defendant did not actively elect to transmit those files is irrelevant." United States v. Chiaradio, 684 F.3d 265, 282 (1st Cir.), cert. denied, 133 S. Ct. 589 (2012).

The same evidence reflecting the actual file-sharing activity on the defendant's computer also was sufficient to prove the charge of possession with the intent to disseminate: in order to disseminate these files containing child pornography, by definition the defendant first had to possess these files, and the file-sharing activity reflects an intent to disseminate.

e. Restitution. The Commonwealth appeals with respect to the denial of its request for a hearing on its motion for restitution. The trial judge based his denial of the request and related denial of the motion for reconsideration on the ground that a hearing on the motion was a necessary prerequisite

to the motion's allowance, and the defendant's right to due process required that, at such a hearing, the victim identified by the Commonwealth, referred to by the pseudonym "Vicky," appear and testify. We disagree, and accordingly remand for a hearing at which the victim need not appear.

The relevant background facts are these. Following the judge's finding of the defendant to be guilty of all charges, the Commonwealth requested that as a component of his sentence, the defendant be required to make restitution to Vicky, a victim of some of the child pornography in the defendant's possession,[21] and requested a hearing to establish the amount of restitution. In support of its motion, the Commonwealth filed a memorandum accompanied by exhibits, including a sworn victim impact statement signed by Vicky, psychological evaluations, and an economic analysis of lost wages. The judge agreed with the Commonwealth that Vicky qualified as a victim of the defendant's crimes who might be eligible for restitution, but declined to hold a restitution hearing because he found that to do so would require the victim's presence, and he wanted to spare her that

---

[21] The Commonwealth states in its brief that "Vicky" is the pseudonym given to the child depicted in some of the defendant's computer files of child pornography. The defendant does not dispute this statement. The Commonwealth also states, again without dispute by the defendant, that Vicky does not live in the Commonwealth.

experience.[22]  The judge appeared to have concluded that this court's decision in Commonwealth v. Denehy, 466 Mass. 723, 740 (2014), made Vicky's appearance mandatory.[23]

A judge unquestionably has the power to order restitution as a condition of probation.  See Denehy, 466 Mass. at 737, and cases cited.  In a case where restitution is sought, if the defendant does not stipulate to the restitution amount, the judge should conduct an evidentiary hearing, at which the victim may testify regarding the amount of the loss.  Commonwealth v. Henry, 475 Mass. 117, 120 (2016).  A restitution hearing "need not be elaborate," but must be "reasonable and fair." Commonwealth v. Nawn, 394 Mass. 1, 7 (1985).  The opportunity to

---

[22] Specifically, the judge stated:  "A restitution hearing is required; and where a restitution hearing is required, in circumstances like this, I'm not going to order restitution. I'm not doing it because I would not require Vicky to appear in this courtroom to testify."  His written denial of the motion noted, "Restitution would require a hearing at which 'Vicky' would be required to appear. . . .  The [c]ourt will not subject Vicky to that process."  Thereafter, in denying the Commonwealth's motion for reconsideration, the judge stated that he "remain[ed] persuaded that any restitution order in the present case would require an evidentiary hearing at which the [d]efendant would be entitled to cross-examine Vicky regarding her claimed damages."

[23] In Commonwealth v. Denehy, 466 Mass. 723, 740 (2014), we stated that with respect to restitution, "[t]he Commonwealth bears the burden of proving both a causal connection and the amount of the loss by a preponderance of the evidence. . . .  A 'unilateral statement' from the victim or, as here, from the assistant district attorney about the amount owed may be insufficient to meet this burden" (citations omitted).

cross-examine witnesses is one, but by no means the only, measure of such fairness.  See Commonwealth v. Casanova, 65 Mass. App. Ct. 750, 755-756 (2006) (hearsay, if reliable, is admissible to carry Commonwealth's burden at restitution hearing).  The hearing must be flexible in nature, and all reliable evidence should be considered.  See id. (restitution process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial" [citation omitted]).

An order to pay restitution forms part of a criminal sentence that includes probation, but a hearing on restitution shares some common features with a probation revocation proceeding.  See Casanova, 65 Mass. App. Ct. at 755-756.  In the probation revocation context, strict evidentiary rules are not imposed, see Commonwealth v. Durling, 407 Mass. 108, 114 (1990), and the same is true of restitution hearings.  See Casanova, supra at 755.  More relevant to the issue raised in the present case, however, is the point that in a probation revocation hearing, although a defendant has a presumptive right to call witnesses, that presumption may be overcome by countervailing interests.  See Commonwealth v. Hartfield, 474 Mass. 474, 481 (2016).  In particular, in determining whether the countervailing interests overcome the presumption after

considering the totality of the circumstances, the judge conducting a restitution hearing should consider whether, based on an individualized assessment of the proposed witness, there is an unacceptable risk that the witness's physical, psychological, or emotional health would be significantly jeopardized if the witness were required to testify in court at the probation hearing. See id.

These same considerations are relevant to a restitution hearing, and they support the conclusion that in the restitution context a trial judge possesses the discretionary authority not to require a victim such as Vicky to appear as a witness, and specifically to preclude the defendant from calling her, if the judge were to find, based on the record before him, that the interest in insulating the victim from further trauma overcomes the defendant's presumptive right to call her.[24] If a judge makes such a determination of unavailability, this does not require denial of a request for a hearing on a motion for restitution. Nor does such a determination of unavailability mean that the defendant, after hearing, could not be ordered to make restitution payments on the victim's behalf. "'[T]he right to confront adverse witnesses and the right to present a defense

_____

[24] Cf. Kearney, 672 F.3d at 99-101 (Federal child pornography prosecution; court affirmed trial judge's award of restitution to Vicky without requiring her appearance).

are distinct due process rights separately guaranteed to probationers' and should not be conflated."  See Hartfield, 474 Mass. at 479, quoting Commonwealth v. Kelsey, 464 Mass. 315, 327 n.12 (2013).  If there is "good cause" for the Commonwealth not to call a witness with personal knowledge to testify but to offer instead reliable hearsay or other evidence to establish the basis for its request for restitution, the requirements of due process are likely to be satisfied.  Cf. Durling, 407 Mass. at 115, 118-119 (because probationer's liberty interest is conditional, so too is probationer's right to confront witnesses, and that right can be denied for "good cause").  Cf. also Rule 7(b) of District/Municipal Courts Rules for Probation Violation Proceedings, Mass. Rules of Court, at 742 (Thomson Reuters 2016).

We emphasize a point previously made:  a hearing on a request for restitution is necessary if the basis for the request or the amount of restitution to be ordered is in dispute.  This follows from the fact that the purpose of restitution is to compensate the injured party for losses incurred as a result of the defendant's criminal conduct.  See Commonwealth v. Rotonda, 434 Mass. 211, 221 (2001).  Accordingly, the Commonwealth must prove that the defendant caused harm to the victim, and the payment of restitution is limited to the economic losses caused by the conduct of the

defendant and documented by the victim.  Id., citing G. L. c. 258B, § 3 (o).  See Nawn, 394 Mass. at 7-8 (amount must be subject to proof of economic loss).  The amount of restitution the victim has received in other cases may thus properly be considered in determining to what extent she has already been compensated for her losses.  See United States v. Gamble, 709 F.3d 541, 553 (6th Cir. 2013).  Here, both the Commonwealth and the defendant requested a hearing on restitution.  The reliability of the Commonwealth's proffered hearsay evidence and restitution amount was disputed, and a hearing should have been held.

    3.  Conclusion.  The judgments of convictions are affirmed. The denial of the Commonwealth's request for a hearing on its motion for restitution is vacated, and the case is remanded to the Superior Court for further proceedings, and specifically a restitution hearing, consistent with this opinion.

                                        So ordered.