NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13454

COMMONWEALTH  vs.  WARREN W. DUNN.


Plymouth.     January 5, 2024. – May 9, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.


Obscenity, Child pornography.  Probable Cause.  Search and
     Seizure, Probable cause, Warrant, Affidavit.  Practice,
     Criminal, Motion to suppress, Affidavit.  Words, "Lewd
     exhibition."


     Indictments found and returned in the Superior Court
Department on March 12, 2021.

     Pretrial motions to suppress evidence and for a hearing on
the affidavit supporting a search warrant were heard by Elaine
M. Buckley, J., and conditional pleas of guilty were accepted by
Brian A. Davis, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Christopher DeMayo (Sabrina Bonanno also present) for the
defendant.
     Elizabeth A. Mello Marvel, Assistant District Attorney, for
the Commonwealth.


     GAZIANO, J.  The defendant, Warren W. Dunn, pleaded guilty

to two counts of possession of child pornography in violation of

G. L. c. 272, § 29C (vii), and two counts of possession of child pornography as a subsequent offense in violation of G. L. c. 272, § 29C (vii), after incriminating evidence was discovered in his apartment pursuant to a search warrant.  On appeal, the defendant asserts that the search lacked probable cause because the trooper who submitted the search warrant application provided a deficient description of two allegedly lewd images in his affidavit and did not attach the images themselves to the affidavit.  The defendant urges us to create a new rule, requiring magistrates to personally view allegedly lewd images before issuing search warrants.  We decline to do so.  Although attaching the photographs or providing a more thorough description would have been preferable in this case, the affidavit read in its entirety was sufficient to establish probable cause.  The defendant also appeals from the denial of his motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155-156 (1978), arguing that the trooper made an intentionally or recklessly false statement in his affidavit when describing the images at issue.  We hold that the motion judge did not abuse her discretion in concluding that the defendant failed to demonstrate that the trooper's descriptions are false.  Accordingly, we affirm the denial of the defendant's motion to suppress and the denial of his motion for a Franks hearing.

Background.  1.  The CyberTipline report.  We summarize the relevant facts from the affidavit submitted by State police Trooper Gerald F. Donovan in support of his application for a warrant to search the defendant's apartment.  See Commonwealth v. Mora, 477 Mass. 399, 400 (2017) ("our inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit'" [citation omitted]).

Donovan has worked as a member of the State police Internet crimes against children (ICAC) task force since 2013.  In 2018, he also became a member of the State police cyber crime unit. The primary duty of the ICAC task force is to investigate potential sexual exploitation of children on the Internet. Donovan has continued to receive training related to this work, attending the ICAC investigative techniques training program, which includes training on crimes associated with child exploitation, and the Attorney General's annual cyber crime conference since 2014.

Based on his training and experience related to the sexual exploitation of children, Donovan described in his affidavit how persons who have previously possessed child pornography are likely to keep sexually explicit visual images depicting children "secreted[] but readily at hand."  He also explained

that these persons are "not likely to destroy [their] collection" of such material.

On April 27, 2020, Donovan received a "CyberTipline" report concerning potential child pornography.  The report was sent to the ICAC task force by the National Center for Missing and Exploited Children (NCMEC).  NCMEC is a private, nonprofit organization that "provides services nationwide for families and professionals in the prevention of abducted, endangered, and sexually exploited children."  In 1998, NCMEC created the CyberTipline, a national clearinghouse for tips and leads regarding child sexual exploitation.  The CyberTipline permits the public and electronic service providers (providers)[1] to submit online reports of potential child exploitation media.  After receiving a report, NCMEC works to identify potential geographic information in the reported file.  NCMEC then shares its CyberTipline reports with law enforcement agencies.[2]

---

[1] Under Federal law, a provider is defined as "an electronic communication service provider or remote computing service," 18 U.S.C. § 2258E(6), and is obligated to make a report of any suspected online child sexual exploitation "as soon as reasonably possible" to the CyberTipline of NCMEC, 18 U.S.C. § 2258A.  See Commonwealth v. Guastucci, 486 Mass. 22, 23 n.2 (2020).

[2] "Pursuant to its clearinghouse role as a private, nonprofit organization, and at the conclusion of its review in furtherance of its nonprofit mission, NCMEC shall make available" each CyberTipline report to at least one of several enumerated law enforcement agencies, including "[a]ny State or

The CyberTipline report received by Donovan was first submitted to NCMEC by a provider, Microsoft, on March 18, 2020. Attached to the report were two images flagged as potential child pornography. A Microsoft employee viewed the two images and then reported both as child pornography. According to NCMEC's categorization system, Microsoft identified both images as "B2." NCMEC defines B2 as "a pubescent minor in any image of lascivious exhibition depicting nudity and one or more of: restraint, sexually suggestive poses, focus on genitals, inappropriate touching, adult arousal, spreading of limbs or genitals, and such depiction lacks serious literary, artistic, political, or scientific value."

The two images attached to the CyberTipline report were then submitted to NCMEC's law enforcement services portal. Through this portal, law enforcement can utilize a tool that "compare[s] . . . hash values calculated from suspected child pornography images and videos with hash values stored in the [child victim identification program]."[3] NCMEC reported that

---

local law enforcement agency that is involved in the investigation of child sexual exploitation." 18 U.S.C. § 2258A(c).

[3] A "hash value" is "[a] number produced by an algorithm that is based on the digital contents of a medium, file, or drive, and usu[ally] represented as a sequence of characters. The value can be used to authenticate data copied from electronic devices, storage media, and electronic files.

both images contained "recognized hash values."  A "recognized hash value" is associated with an image or video that was previously submitted to NCMEC's child recognition and identification system and "may or may not contain apparent child pornography or depict identified children."[4]

After reviewing the CyberTipline report, Donovan personally viewed the two images in question.  He provided identical "brief description[s]" for both images in his affidavit:  "This image depicts a pubescent male standing completely naked with the focus of the image on the young boy's penis.  The young boy is approximately [thirteen] to [fifteen] years of age."  Donovan did not attach the images to his application for a search warrant.

As part of his investigation, Donovan also reviewed a report from the Hull police department.  This report recounted

---

Matching hash values often strongly suggests that a copy is identical to the original."  Black's Law Dictionary 862 (11th ed. 2019).

[4] As noted in the affidavit, in addition to recognized hash values, NCMEC also categorizes two other types of hash values: identified child and unrecognized hash values.  A hash value categorized as "identified child" is associated with an image or video that appears to show at least one child previously identified by law enforcement.  Although these hash values may be associated with "apparent child pornography," they may also be associated with files that do not contain child pornography.  An "unrecognized hash value" is associated with an image or video that has not been previously submitted to the child recognition and identification system.

the defendant's 2007 arrest after police seized "various media forms containing child pornography of boys as young as [ten] years old" from the defendant's apartment -- the same residence Donovan sought to search in his application for a search warrant. The report also described how "[a]n interview was conducted post-Miranda where [the defendant] made several admissions consistent with [the] Hull [police department's] investigation."

Additionally, the Attorney General issued an administrative subpoena to Comcast, an Internet service provider, for the subscriber information linked to the Internet protocol (IP) address in the CyberTipline report.[5] Comcast's records identified the defendant as the subscriber for the designated IP address and his place of residence as the service address. When cross-referenced with the CyberTipline report, the IP address from the subpoena is the same IP address listed for the two images reported by Microsoft.

Last, Donovan submitted a query to the registry of motor vehicles and checked the Hull town assessor's online database as part of his investigation. Through these efforts, Donovan confirmed that the defendant was a level two sex offender and

---

[5] "IP address" is defined as "the numeric address of a computer on the Internet." Merriam-Webster's Collegiate Dictionary 660 (11th ed. 2020).

owned an apartment associated with the IP address that was the subject of the Attorney General's subpoena.

2.  The search.  On June 3, 2020, Donovan applied for a search warrant to search any computers, cell phones, or digital devices at the defendant's residence for evidence related to the crimes of possession and dissemination of child pornography. The application also included a request for a qualified computer forensic and hardware expert to search the defendant's computer system and to copy digital evidence stored on any servers that the defendant may have remotely accessed from his digital devices.

A magistrate granted the application for the search warrant that same day, on June 3, 2020.  On execution of the warrant later that afternoon, a laptop, "thumb drive," cell phone, and empty tablet box were seized.  Officers later found over 2,800 images of child pornography on the thumb drive and one such image on the cell phone.

3.  Prior proceedings.  In March 2021, a grand jury indicted the defendant on two counts of possessing child pornography in violation of G. L. c. 272, § 29C (vii), and two counts of possessing child pornography as a subsequent offense in violation of G. L. c. 272, § 29C (vii).

In September 2021, the defendant filed two motions in the Superior Court:  a motion to suppress the evidence seized from

his devices and a motion for a Franks hearing.  After an evidentiary hearing in November 2021, a Superior Court judge denied both of the defendant's motions in a written decision entered on January 4, 2022.

On August 26, 2022, the defendant filed an agreement to plead guilty, expressly preserving his right to appeal from the judge's denials of his motion to suppress and his motion for a Franks hearing.  The defendant pleaded guilty to all charges later that day.  As part of his plea, the defendant stipulated to certain facts regarding the two images that were attached to the CyberTipline report.[6]

Because the two allegedly lewd photographs were impounded, in February 2023, the defendant filed a motion to compel the Commonwealth to produce the photographs.  The motion was allowed the following month, with instruction from the motion judge that

_____

[6] The defendant stipulated that one image "appeared to [depict] a juvenile male" looking to the right.  "The photo was cropped in such a way that essentially you could not see the juvenile below the knees and the juvenile had his face partially obstructed."  The photograph showed "the naked torso of the juvenile, as well as the naked penis of the juvenile male."  The defendant also stipulated that the second image was of "a naked juvenile male . . . holding a rock,  . . . the rock being mostly covered by his hands."  The image contained blurred trees in the background and "light streaming in . . . show[ing] . . . a partially erect juvenile penis casting a shadow on the leg of the juvenile."  As these details were not included in the affidavit accompanying the application for a search warrant, we do not consider them in analyzing whether probable cause existed to issue the warrant.  See Mora, 477 Mass. at 400.

defense counsel was permitted to view, but not copy, the impounded materials after executing an appropriate protective order.

After the defendant filed a notice of appeal from the denials of his motion for a Franks hearing and his motion to suppress, his appeal was docketed in the Appeals Court in May 2023. That same month, the defendant filed an application for direct appellate review with this court, which we allowed on June 16, 2023.

Discussion. 1. Motion to suppress. On appeal from the denial of his motion to suppress, the defendant argues that Donovan's "conclusory" descriptions of the two images did not establish probable cause to search the defendant's home and electronic devices. The defendant also asks us to institute a new rule requiring magistrates, in reviewing search warrant applications, to personally view allegedly lewd images before making a probable cause determination. We conclude that the search warrant in this case was supported by probable cause and decline the defendant's request to create a new rule.

"The question whether there was probable cause to issue the search warrant is a question of law that we review de novo." Commonwealth v. Perkins, 478 Mass. 97, 102 (2017). Our analysis "begins and ends with the four corners of the affidavit," from which we draw all reasonable inferences (citation omitted).

Commonwealth v. Lowery, 487 Mass. 851, 856 (2021). See Commonwealth v. Morin, 478 Mass. 415, 425 (2017). This is not a "hypercritical analysis" but a "commonsense and realistic" examination (citation omitted). Perkins, supra. We are guided by the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., quoting Commonwealth v. Anthony, 451 Mass. 59, 68 (2008). To determine if probable cause existed, we examine whether an affidavit showed a sufficient nexus "between the suspected criminal activity, the items sought, and the place to be searched." Commonwealth v. Martinez, 476 Mass. 410, 416-417 (2017). Whether an affidavit supplied probable cause is a fact-intensive inquiry. Commonwealth v. Holley, 478 Mass. 508, 521-522 (2017). We therefore give "considerable deference to the magistrate's determination of probable cause." Lowery, supra at 857. See Commonwealth v. Keown, 478 Mass. 232, 238 (2017), cert. denied, 583 U.S. 1139 (2018).

Probable cause is "not a high bar" (citation omitted). Commonwealth v. Guastucci, 486 Mass. 22, 26 (2020). See Keown, 478 Mass. at 238 ("The probable cause necessary to support the issuance of a search warrant does not require definitive proof of criminal activity" [citation omitted]). "In dealing with probable cause . . . we deal with probabilities" (citation omitted). Commonwealth v. Henley, 488 Mass. 95, 116 (2021).

"The probable cause showing necessary for issuance of a search warrant is 'only a fair probability that evidence of such a crime would be found in particular locations,' not 'a prima facie showing that the defendant possessed child pornography.'" Martinez, 476 Mass. at 416-417, quoting Anthony, 451 Mass. at 72.

Where an application for a search warrant is based on an allegation that an image possessed by the defendant is child pornography, probable cause for the issuance of a warrant can be established through (1) the magistrate independently viewing the image in question and determining that it constitutes child pornography; (2) a sufficiently detailed description in the search warrant affidavit of the image in question to allow the magistrate to determine that the image constitutes child pornography; or (3) other sufficient evidence contained in the four corners of the affidavit that corroborates that the image in question is child pornography. See United States v. Pavulak, 700 F.3d 651, 661 (3d Cir. 2012), cert. denied, 569 U.S. 968 (2013). See also United States v. Chiu, 36 F.4th 294, 297 (1st Cir.), cert. denied, 143 S. Ct. 336 (2022) (corroborative evidence established by "fair probability" that images were pornographic).

We examine first if the affidavit adequately described the images as lewd. See G. L. c. 272, § 29C (vii) (unlawful to

"knowingly purchase[] or possess[] a . . . visual reproduction . . . of any child whom the person knows or reasonably should know to be under the age of [eighteen] years of age and such child is . . . depicted or portrayed in any pose, posture or setting involving a lewd exhibition"). To determine if an image constitutes a "lewd exhibition," we utilize the factors enumerated in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987). See Commonwealth v. Rollins, 470 Mass. 66, 76 (2014). We consider the Dost factors with the purpose of G. L. c. 272, § 29C, in mind. See Commonwealth v. Rex, 469 Mass. 36, 45 (2014) (purpose of statute is "to protect children from sexual exploitation"). These Dost factors are:

"1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

"2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

"3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

"4) whether the child is fully or partially clothed, or nude;

"5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]

"6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer."

Dost, supra.

Our determination of lewdness is made on a case-by-case basis. Rex, 469 Mass. at 45. Although the Dost factors are a guide, they are "neither comprehensive nor dispositive." Id. An image need not exhibit each factor to be lewd. Id. However, "nudity alone is not enough to render a photograph lewd." Commonwealth v. Sullivan, 82 Mass. App. Ct. 293, 302 (2012). See Rex, supra at 43 ("whether photographs of the naked body are entitled to protection under the First Amendment [to the United States Constitution is] based on an assessment of whether . . . they are lewd").

In his affidavit, Donovan described the images as depicting "a pubescent male standing completely naked with the focus of the image on the young boy's penis. The young boy is approximately [thirteen] to [fifteen] years of age." The defendant asserts that these descriptions were insufficient to establish probable cause, analogizing to United States v. Brunette, 256 F.3d 14, 17-18 (1st Cir. 2001), where the United States Court of Appeals for the First Circuit held that a search warrant lacked probable cause based on the conclusory description provided. Specifically, the officer in Brunette described the images at issue as depicting "a prepubescent boy lasciviously displaying his genitals" (citation omitted). Id. at 17. The First Circuit characterized this description as a

"legal conclusion parroting the statutory definition" of child pornography.  Id.  See 18 U.S.C. § 2256(2)(A)(v) (Federal statute criminalizing child pornography image asks whether image depicts "lascivious exhibition of the anus, genitals, or pubic area").  The First Circuit concluded that this meager "legal assertion, absent any descriptive support and without an independent review of the images, was insufficient to sustain the magistrate judge's determination of probable cause."  Brunette, supra.

Here, Donovan's descriptions of the images do contain some additional detail beyond what was found to be inadequate in Brunette.  Aside from specifying that the juveniles are nude, Donovan estimated their ages to be between thirteen and fifteen years old, in contrast to Brunette, where the juveniles were described only as "prepubescent."  Brunette, 256 F.3d at 17.  The subjects of the photograph "are of an age when [children] normally are clothed."  United States v. Frabizio, 459 F.3d 80, 86 (1st Cir. 2006).  See Sullivan, 82 Mass. App. Ct. at 305 (nude girl appearing on cusp of puberty in photograph was "well past the age of the 'Coppertone girl'"); United States v. Knox, 32 F.3d 733, 750 (3d Cir. 1994), cert. denied, 513 U.S. 1109 (1995) ("No one seriously could think that . . . an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws").

Donovan also described the juvenile's penis as the "focus" of each image.  We agree with the defendant that this description is conclusory, as it largely mirrors the first Dost factor, "whether the focal point of the visual depiction is on the child's genitalia or pubic area," without elaboration. Dost, 636 F. Supp. at 832.  Donovan provides no explanation as to how the juveniles' genitalia are the "focus" of the images. He does not describe the lighting, composition, or perspective of the photographs; the gestures or positioning of the juveniles; the proximity or framing of the genitalia; or any photographic manipulation such as cropping or blurring.[7]  See Figueroa v. Mazza, 825 F.3d 89, 101 (2d Cir. 2016) ("In a number of the photos, the child's genitals are the primary object of focus; indeed, some photos show nothing else save the child's lower torso and upper thighs"); United States v. McCarty, 835 F. Supp. 2d 938, 946 (D. Haw. 2011) (focal point was genitalia where children's faces were cut off from image); United States v. Getzel, 196 F. Supp. 2d 88, 92 (D.N.H. 2002) (focal point of image was genitalia where image was taken at "horizontal vantage point near the subjects' feet" and "present[ed] . . . genitalia

_____

[7] We do not intend to suggest that further explanatory details are required for every Dost factor.  For example, where an affiant describes an image as containing a "nude" child, the meaning of the word "nude" is self-evident.

at the forefront of the image").  In the absence of further information, the descriptions of the images alone were insufficient to establish probable cause.[8]

However, the affidavit contained more than a single sparse description of two images.  First, the affidavit described how CyberTipline reports are created.  A provider -- here, Microsoft -- submitted an initial report flagging two images.  The affidavit further specifies that a Microsoft employee personally viewed the two images.  This personal observation is a factor the magistrate could consider in the probable cause analysis.  See Commonwealth v. Atchue, 393 Mass. 343, 348 (1984) (personal observation coupled with specific facts was factor in support of probable cause).  Other jurisdictions have found that CyberTipline reports themselves weigh in favor of probable cause, holding these reports to be equivalent to a reliable tip from a concerned citizen.  See, e.g., People v. Wadleigh, 93 Cal. App. 5th 531, 541 (2023); James v. State, 312 Ga. App. 130, 134 (2011) (Google employee "act[ed] in the role of a concerned citizen" in making report to NCMEC).  We agree.  See Commonwealth v. Cavitt, 460 Mass. 617, 628-629 (2011) (tips from

---

[8] An incomplete description of the image's focal point risks speculating about the viewer's subjective intent instead of the "objective criteria of the photograph's design."  United States v. Amirault, 173 F.3d 28, 35 (1st Cir. 1999).  "If . . . subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography."  Id. at 34.

citizen informants are given more weight in probable cause analysis because these informants do not have protection of anonymity and may be subject to charges for filing false reports).

Second, the affidavit detailed the results of a hash search on NCMEC's law enforcement services portal.  NCMEC returned "recognized hash values" for both images.  This allowed the magistrate to reasonably infer that another person or entity previously submitted images with the same hash values to NCMEC. See United States v. Keith, 980 F. Supp. 2d 33, 36-37 (D. Mass. 2013) ("any alteration of the file, including even a change of one or two pixels, would result in a different hash value"). Although this information does not confirm that the images are child pornography, it does raise the reasonable inference that another person or provider suspected that the exact same images were child pornography.  Thus, even if NCMEC's description of a "recognized hash value[]" is equivocal, the inference that at least one other person or entity suspected the images to be child pornography adds weight to the probable cause analysis. See Commonwealth v. Nowells, 390 Mass. 621, 627 (1983) (separate informant statements may support probable cause finding with adequate mutual corroboration).

Third, Donovan confirmed that the defendant was a registered level two sex offender and detailed the defendant's

prior arrest in 2007.[9] Donovan explained that in 2007, police seized "child pornography of boys as young as [ten] years old" from the defendant's residence. The defendant also made "several admissions" in connection with the 2007 investigation. From this, the magistrate knew, or could at least reasonably infer, that the defendant had previously been arrested and charged with possessing child pornography and admitted to doing so. A defendant's prior criminal history may be helpful for establishing probable cause, particularly where the prior history involves a similar crime. See Commonwealth v. Long, 482 Mass. 804, 814 (2019) (while "a prior conviction of a related offense does not establish probable cause that an individual is committing a similar offense[,] . . . [it] may be a factor in the over-all [probable cause] analysis"); United States v. Falso, 544 F.3d 110, 120 (2d Cir. 2008), cert. denied, 558 U.S. 933 (2009) ("defendant's criminal history relating to child pornography" is "factor[] weighing in favor of probable cause"); United States v. Wagers, 452 F.3d 534, 541 (6th Cir.), cert. denied, 549 U.S. 1032 (2006) (prior conviction of possession of

---

[9] A person is classified as a level two sex offender "when it has been determined his or her risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public access to sex offender registry information." 803 Code Mass. Regs. § 1.03 (2016).

child pornography was "relevant, though not dispositive" to probable cause analysis).

The defendant's criminal history is particularly relevant here, where Donovan explained, based on his experience, that a person who has previously possessed child pornography is likely to retain similar images. See Guastucci, 486 Mass. at 29 (evidence of previous possession of child pornography supports reasonable inference that person may presently possess new images); Long, 482 Mass. at 814; Commonwealth v. Fontaine, 84 Mass. App. Ct. 699, 707 (2014) (prior criminal convictions considered in probable cause analysis); Commonwealth v. Victor, 1 Mass. App. Ct. 600, 602 (1973) (same). See also United States v. Notman, 831 F.3d 1084, 1088 (8th Cir. 2016) (noting "the compulsive nature of the crime of possession of child pornography and the well-established hoarding habits of child pornography collectors").

Considering the affidavit as a whole -- including Donovan's description of the image depicting nude juveniles from thirteen to fifteen years of age, the Microsoft employee's personal observation of the images, the hash search results, and the defendant's prior criminal history -- the magistrate had sufficient information to find probable cause to issue a search warrant.

The defendant cites two cases, Brunette, and United States v. Sheehan, 70 F.4th 36 (1st Cir. 2023), to suggest that we should hold otherwise and institute a new rule requiring magistrates to personally view allegedly lewd images.  However, neither case creates such a rule.  In Brunette, 256 F.3d at 17-19, the First Circuit held that where an affidavit contained only "conclusory statutory language" describing the images in question, without any "other indicia of probable cause," the magistrate was required to view the allegedly lewd images.  But as the First Circuit later reiterated, "[i]n Brunette, we observed that including . . . contextual and investigatory details in an affidavit may have put the government on firmer probable-cause footing than the mere anodyne parroting of statutory language" (emphasis added).  Chiu, 36 F.4th at 298-299.  In Sheehan, supra at 46, the First Circuit considered an affidavit where the images at issue were described as depicting "prepubescent penises that lacked pubic hair."  The court first held that the affidavit's description, which "did little more than signify that the images contained child nudity," was insufficient, "when viewed in isolation," to establish probable cause.  Id.  The court then noted that an inadequate description of the images did not end its inquiry, and next assessed whether additional information in the affidavit, considered along with

the "otherwise deficient image description," justified a finding of probable cause.  Id. at 47.

The defendant cites to no cases, and to our knowledge no cases exist, that have adopted the rule he urges us to announce. See Pavulak, 700 F.3d at 661; United States v. Wellman, 663 F.3d 224, 228 (4th Cir. 2011), cert. denied, 566 U.S. 953 (2012) ("We decline to impose a requirement that a search warrant application involving child pornography must include an image of the alleged pornography"); United States v. Mutschelknaus, 592 F.3d 826, 828-829 (8th Cir. 2010); United States v. Lowe, 516 F.3d 580, 586 (7th Cir. 2008) ("an issuing court does not need to look at the images described in an affidavit in order to determine whether there is probable cause to believe that they constitute child pornography"); Brunette, 256 F.3d at 19-20; United States v. Jasorka, 153 F.3d 58, 60 (2d Cir. 1998) ("the issuing magistrate is not required to personally view allegedly obscene [materials] prior to issuing a warrant [for] their seizure" [quotation and citation omitted]).  See also United States v. Miknevich, 638 F.3d 178, 183 (3d Cir.), cert. denied, 565 U.S. 847 (2011), quoting New York v. P.J. Video, Inc., 475 U.S. 868, 874 n.5 (1986) ("we have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure"); United States v. Battershell, 457 F.3d 1048, 1052 (9th Cir. 2006) (same); United

States v. Simpson, 152 F.3d 1241, 1247 n.2 (10th Cir. 1998) (same).[10]

Whether describing an image in the search warrant affidavit or attaching the image itself is the better approach will depend on the nature of the subject matter and the circumstances of

---

[10] Surveying other jurisdictions, we note that many other State courts have likewise declined to adopt such a rule.  See, e.g., People v. Rowland, 82 Cal. App. 5th 1099, 1120 (2022) ("the magistrate could rely on [sufficient] description and did not have to view the images to decide whether a warrant should issue to search and seize [suspect's] property"); People v. Rabes, 258 P.3d 937, 941 (Colo. App. 2010) ("we decline to adopt an absolute requirement that images of child pornography must be attached to the affidavit to establish probable cause"); State v. Sawyer, 335 Conn. 29, 44 (2020) (descriptions of photographs alone provided "fair probability" images were lascivious); State v. Peltier, 373 So. 3d 380, 386 (Fla. Dist. Ct. App. 2023) ("the law does not require the magistrate to personally review the alleged [child] pornography"); State v. Nuss, 279 Neb. 648, 655 (2010) ("while copies of images . . . may be used to establish probable cause . . . , they are not absolutely required"); State v. Henz, 514 P.3d 1, 13 (N.M. Ct. App. 2022) ("the issuing court need not independently view images alleged to depict child pornography in order to establish probable cause"); Commonwealth v. Green, 204 A.3d 469, 482 (Pa. Super. Ct. 2019), aff'd, 265 A.3d 541 (2021) ("Although the magisterial district judge did not view the photograph, the affidavit of probable cause contained a sufficient description of it to provide probable cause to believe it was child pornography"); State v. Reisner, 253 A.3d 1273, 1282 (R.I. 2021) ("a judge must have the tools, via either the image itself, a thorough description, or a direct connection between the specific hash value and files containing child pornography, to independently assess whether there is probable cause to believe that an image of a child is pornographic"); State v. Stone, 137 S.W.3d 167, 178 (Tex. Ct. App. 2004) ("it is not necessary that a magistrate personally view allegedly obscene material prior to issuing a warrant; rather, the magistrate can conclude there is probable cause based on an affidavit's description of the obscene materials").

each case.[11]  In deciding which method to use, affiants should also consider that anytime a person -- including a magistrate -- views an image of child pornography, the child is revictimized. See Rex, 469 Mass. at 46 ("each time [child pornography] is viewed the child is harmed" [citation omitted]).  See also Commonwealth v. Feliz, 481 Mass. 689, 703 (2019), S.C., 486 Mass. 510 (2020) (children depicted in child pornography are revictimized with each viewing); United States v. Rothenberg, 923 F.3d 1309, 1325 (11th Cir. 2019), cert. denied, 140 S. Ct. 812 (2020), quoting Paroline v. United States, 572 U.S. 434, 457 (2014) ("the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured"); United States v. Kearney, 672 F.3d 81, 95 (1st Cir. 2012), cert. denied, 568 U.S. 1223 (2013) (every additional viewing of child pornography "represents a renewed violation of the privacy of the victims and a repetition of their abuse" [citation omitted]); United States v. Kelly, 868 F. Supp. 2d 1202, 1204 (D.N.M. 2012) ("Some child victims report they feel re-victimized every time they are informed someone

---

[11] For example, where the lewd nature of a particular image is difficult to convey in a written description, an applicant may opt to attach the image instead.  Conversely, where an image is particularly graphic or disturbing, and its lewd nature does not elude description, an applicant may wish to provide a written description.

views the images that memorialize the brutal pain and shame they have suffered.  They live in fear that anybody they meet in person could recognize them from these images").

Therefore, we do not adopt a new rule requiring magistrates to personally view allegedly lewd images.  Instead, a magistrate must ensure that the affidavit as a whole provides a "substantial basis" to conclude that evidence of the crime, here possession of child pornography, is "probably present . . . at the place to be searched" (citation omitted).  Lowery, 487 Mass. at 857.

2.  Motion for Franks hearing.  A defendant may submit a Franks motion "to challenge the truthfulness of factual statements made in an affidavit supporting the warrant."  Commonwealth v. Amral, 407 Mass. 511, 519 (1990).  A defendant must make a "substantial preliminary showing" to be entitled to a Franks hearing.  Commonwealth v. Long, 454 Mass. 542, 552 (2009), S.C., 476 Mass. 526 (2017), quoting Franks, 438 U.S. at 155.  First, a defendant must show that an affiant either included a false statement or omitted material "knowingly and intentionally, or with reckless disregard for the truth" (citation omitted).  Commonwealth v. Andre, 484 Mass. 403, 407-408 (2020).  Second, the defendant must demonstrate that the false statement was necessary for the probable cause determination.  Id. at 408.  If a defendant successfully makes

this preliminary showing, he is entitled to a hearing. Commonwealth v. Valdez, 402 Mass. 65, 67 (1988). If at the hearing, "the judge finds probable cause lacking, the judge must void the warrant and suppress the evidence and any 'fruits thereof.'" Andre, supra, quoting Long, supra at 553. We review the denial of a motion for a Franks hearing for abuse of discretion. See Commonwealth v. Perez, 87 Mass. App. Ct. 278, 285 (2015).

Here, the defendant claimed in his motion, and asserts on appeal, that Donovan's description of the images in his affidavit is false. To prove the falsity of Donovan's description, the defendant provided a contrasting description of the images. The motion judge concluded that the defendant failed to demonstrate that Donovan's characterization was intentionally or recklessly false. The judge reasoned that "the defendant's descriptions of the images merely reflect a different interpretation of what the images depict." The judge further noted that the defendant's interpretation of the images ran counter to Microsoft's designation of the images as "lascivious" in the CyberTipline report.

It was not an abuse of discretion for the judge to conclude that Donovan's descriptions of the images did not amount to intentionally or recklessly false statements. As discussed supra, Donovan described the images as depicting "a pubescent

male standing completely naked with the focus of the image on the young boy's penis. The young boy is approximately [thirteen] to [fifteen] years of age." The defendant, on the other hand, characterized the images as "more akin to National Geographic type images or nudist beach images," further describing one image as showing "a standing nude male from the knees up, looking to the right, with trees in the background" and the other image as showing "a nude male holding a rock with trees in the background." The defendant offered no other evidence that Donovan's description was false beyond his own description.[12]

Where a "defendant merely challenge[s] the veracity of the police officer's affidavit by offering his own account of the events in question," it "does not rise to the level of a

---

[12] The defendant has also filed a motion requesting that we order the Superior Court to transmit the two impounded photographs to this court, so that we may compare Donovan's description to the actual photographs. These photographs were not part of the motion judge's consideration in denying the motion for a Franks hearing, and therefore we will not consider the images on appeal. See Commonwealth v. Delossantos, 492 Mass. 242, 252 n.9 (2023) ("we review only the evidence presented to the motion judge"). The defendant attempts to justify his failure to present the images to the motion judge, explaining that the order impounding the two photographs prevented him from attaching copies of the photographs to his Franks motion. However, the defendant fails to explain why he did not file, in connection with his Franks motion, a motion for some form of relief -- such as a motion for in camera inspection -- to ensure that the impounded images were viewed by the motion judge and therefore incorporated into the record on appeal. The defendant's motion is denied.

substantial preliminary showing of intentional falsity or reckless disregard for the truth."  Commonwealth v. Ramos, 402 Mass. 209, 215 (1988).  Moreover, even in his descriptions of the images, the defendant still admits that they depict nude males; he simply characterizes them as "nudist beach images." Therefore, the judge did not abuse her discretion in denying the defendant's motion for a Franks hearing.

Conclusion.  We affirm the orders denying the defendant's motion to suppress and motion for a Franks hearing.

So ordered.